UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MERLE SATER, et al.,

    Plaintiffs,

    v.                          Case No. 3:23-CV-403-CCB

REPUBLIC SERVICES OF INDIANA
TRANSPORTATION LLC, et al.,

    Defendants.

## ORDER

On December 2, 2025, Plaintiffs Merle and Cindy Sater and Defendants Travis Ottbridge and Republic Services of Indiana Transportation, LLC ("Republic") filed separate motions in limine in preparation for trial. (ECF 109, 111).[1] The Court now rules on those motions.

## STANDARD

The Court has broad discretion to rule on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Evidentiary rulings ordinarily should not be made until trial when the Court can resolve admissibility issues in proper context. The Court thus excludes evidence in limine only when it is "clearly inadmissible on all potential grounds."

---

[1] Although Defendants initially filed their motions in limine on December 2, 2025, they notified the Court on December 4 that they had mis-designated the disputed status of several motions. (ECF 112). Defendants subsequently filed a document with identical substance but corrections regarding the disputed status of those motions. (ECF 112-1).

*United States v. Jackson*, 535 F. Supp. 3d 809, 813 (N.D. Ind. 2021). If admissible on one ground or another, the Court will defer ruling on admissibility until trial. *See id.* Even when the Court issues an order in limine, the order remains preliminary and subject to the Court's revision at trial. *See Farfaras v. Citizens Bank & Tr.*, 433 F.3d 558, 565 (7th Cir. 2006).

## ANALYSIS

**A. Disputed Topics in Plaintiffs' Motion in Limine (ECF 109)[2]**

**1. Motion to bar any suggestion or comment about who pays the verdict (Topic 1)**

Plaintiffs have requested that the Court prohibit evidence or argument stating or implying that a specific defendant (Republic or Travis Ottbridge) would be more or less responsible for paying any verdict rendered by the jury in favor of Plaintiffs. Defendants respond that they "should not be prohibited from saying that judgment will be entered against both Mr. Ottbridge and Republic" and that they agree the parties "should not be allowed to suggest that Republic will pay [the judgment] or that Ottbridge won't be affected by the judgment." (ECF 114 at 5). This is consistent with Plaintiffs' request. Thus, Plaintiffs' motion is granted, inasmuch as the parties are barred from presenting evidence or argument as to how the judgment will be paid and by whom.

---

[2] Undisputed topics A.1–9 of Plaintiffs' motion in limine are granted by agreement. (ECF 110 at 1–6, ¶¶1–9).

**2. Motion to bar statements apologizing or expressing concern for Plaintiffs or others for the incident and related damages (Topic 2)**

Plaintiffs have requested that Defendants and their counsel be prohibited from expressing any apology, sympathy, or regret for Plaintiffs' losses involved in this case. In support of this request, Plaintiffs cite Indiana Code § 34-43.5-1-4, which prevents admissions or expressions of apology or sympathy from being allowed into evidence in Indiana trial court. But not only is this statute nonbinding in federal court, it is not even on point. The Indiana law is a rule of evidence, not the personal courtroom behavior of counsel or the parties. Similarly, Plaintiffs argue that these statements should be excluded under Rule 403 and 401, but it appears unlikely that the Federal Rules of Evidence apply to non-evidentiary statements of sympathy made by counsel or parties in the courtroom. *See United States v. Phillips*, 527 F.3d 1021, 1032 (7th Cir. 1975) (analyzing improper counsel statements under the ABA rules of ethics, not the Rules of Evidence); *Valbert v. Pass*, 866 F.2s 237, 241 (7th Cir. 1989) (noting that statements made by counsel are not evidence).

Furthermore, the Court employs a standard jury instruction, based on the Seventh Circuit pattern 1.06, stating that "questions, objections, or comments by the lawyers are not evidence." This instruction should sufficiently mitigate Plaintiffs' concerns about jury manipulation. Jurors are presumed to comply with the Court's instructions. *See Doe v. Johnson*, 52 F.3d 1448, 1458 (7th Cir. 1995). Plaintiffs' motion is denied.

**3. Motion to bar discussion concerning medical conditions not causally related to the crash (Topic 3)**

Plaintiffs have requested that Defendants be prohibited from introducing evidence or engaging in any lines of questioning "regarding any medical condition(s) or treatment unrelated to the injuries sustained and treatment rendered to Merle Sater" prior to the crash. (ECF 110 at 8). Plaintiffs argue that this information is not relevant to the determination of damages in this case. But Mr. Sater's prior injuries are relevant in several ways—both as evidence that specific injuries or symptoms were unrelated to or exacerbated by the crash, and as evidence relating to what Mr. Sater's life and work expectancy would have been absent the crash. *See, e.g.*, *Moore v. City of Chicago*, 2-C-5130, 2008 WL 4549137, at *1 (N.D. Ill. Apr. 15, 2008) ("evidence of any pre-existing injury . . . is relevant to rebut [plaintiff's] claims of causation."). Plaintiffs' motion is denied.

**4. Motion to bar any argument related to life expectancy (Topic 4)**

Plaintiffs request that Defendants be barred from making any statements regarding whether Merle Sater's life expectancy is less than what is set forth in the standard expectancy tables. Plaintiffs assert that any argument regarding expectancy should be excluded because Defendants have not retained any experts on the topic. But they do not cite to any requirement that life expectancy determinations require expert testimony. In fact, the Indiana Model Jury Instructions on life expectancy tables envision that jurors will take a party's "occupation, health history, state of health, and

4

habits" into account. *See* Indiana Model Civil Jury Instruction 537 (2024). Plaintiffs'
motion is denied.

### 5. Motion to bar any testimony from Travis Ottbridge (Topic 5)

Plaintiffs request that Travis Ottbridge be prohibited from testifying in this case
because he "could not possibly be in possession of information relevant to the issues
remaining in this case," which are causation and damages. (ECF 110 at 9). But as
Plaintiffs themselves point out, Mr. Ottbridge was present at the time of the crash. (*Id.*)
He was also the admitted cause of the crash. (ECF 9 at 3). Mr. Ottbridge's testimony as a
witness to the crash has relevance for important aspects of the proximate cause and
damages questions at issue in this case, such as the speed of the moving vehicles and
the dynamics of the crash. Plaintiffs' motion is denied.

### 6. Motion to bar any evidence of alleged prior bad acts by Mr. Sater (Topics 6, 8, & 9)

Plaintiffs have also moved to bar admission of various prior "bad acts" by Mr.
Sater, including his admission to the hospital with alcohol and amphetamines in his
system (Topic 6), his various prior criminal convictions and charges (Topic 8), and his
termination from the Indiana Department of Transportation ("IDOT") (Topic 9).
Plaintiffs argue that this evidence should be excluded under Rule 403.

Mr. Sater's September 26, 2005 hospital admission record indicating alcohol and
amphetamine use fails Rule 403 balancing; while the Indiana Model Jury Instructions on
the use of mortality tables explicitly envision that jurors "may evaluate all facts and
circumstances that bear on the life expectancy of plaintiff, including . . . health history . .

. and habits," Indiana Model Civil Jury Instruction 537 (2024), this does not override Rule 403's balancing mandates. *See Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1183 (7th Cir. 1992). Here, Defendants do not provide evidence to show a consistent pattern of substance abuse, or that Mr. Sater's alcohol or amphetamine use continued after his hospitalization on September 26, 2005. (ECF 114 at 12). The probity of that single hospitalization to his life expectancy is low. At the same time, the risk of prejudice is high—even if the jury is not being asked to weigh Mr. Sater's fault, there is a chance that they may brand him as an alcoholic or habitual drug user through this single evidence point, thereby severely affecting the life expectancy calculus in a way that is unmoored from the evidence. *See Mankey v. Bennet*, 38 F.3d 353, 360 (7th Cir. 1994) (excluding evidence of drug use as prejudicial when there was an insufficient link to life expectancy).

But Mr. Sater's criminal history is highly probative of the damages question in this case, as it affects what Mr. Sater's job opportunities would have been absent his disabled status. *See Becker v. City of Evansville*, 3:12-CV-00182, 2016 WL 6471292, at *4 (S.D. Ind. Nov. 1, 2016) (past convictions relevant and admissible to lost wages claims since "incarceration bears directly on any claim for lost wages"); *Teresko v. The 3M Co.*, 22-CV-1532-JPS, 2024 WL 2864402, at *22 (E.D. Wisc. June 16, 2024) (holding that prior conviction was "relevant to vocational loss and lost earning capacity" because plaintiff was required to disclose that conviction on job applications) (citing *Clark v. W & M Kraft, Inc.*, 476 F. App'x 612, 617 (6th Cir. 2012) (probative value of prior conviction outweighs potential "to inflame the jury" where it is relevant to damages calculation)).

Moreover, the risk of prejudice is reduced in cases where the jury is not being asked to evaluate Plaintiffs' fault, but considers the evidence "only in regard to the damages issue." *Berry v. Deloney*, 28 F.3d 604, 606 (7th Cir. 1994). They key question here is whether the proffered evidence would be relevant in a future employer's decision regarding Mr. Sater. However, while some elements of this criminal history are unlikely to be excluded by Rule 403, the precise extent and nature of the admissible history depends on a granular analysis of the specific probative and prejudicial value of each criminal matter. For example, convictions may be more relevant than mere charges. In addition, the Court must decide upon the extent of details to be admitted. For example, the jury may not need to know any precise details of a criminal conviction beyond the mere fact of it in order to calculate its implications for Mr. Sater's employment prospects. Thus, the Court defers ruling on topic 8 until trial.

Defendants also seek to present evidence indicating that Mr. Sater was fired from IDOT due to his difficulty working with supervisors and other employees. (ECF 114 at 21). Mr. Sater's termination from IDOT is highly probative of his future work prospects. *See Johnston v. Chestnut*, 2:09-CV-137, 2011 WL 10934156, at *1 (N.D. Ind. Oct. 17, 2011) (past employment terminations "relevant and admissible on the issue of Plaintiff's future employability, and thus future income"). The probative value of this evidence is not "substantially outweighed" by any prejudice it might cause. Fed. R. Evid. 403.

Thus, Plaintiffs' motion is granted as to Mr. Sater's hospitalization records indicating drug and alcohol use (Topic 6), deferred as to Mr. Sater's criminal history (Topic 8), and denied as to Mr. Sater's job history (Topic 9).

**7. Motion to bar any arguments regarding unused, identified witnesses (Topic 7)**

Plaintiffs have moved to prevent Defendants from making any statements or arguments based on the lack or absence of witnesses called by Plaintiffs. While it is perfectly appropriate to make arguments based on the insufficiency or lack of evidence provided by a party (through witnesses or otherwise), *see* Indiana Model Civil Jury Instruction 535 (2024), it would be inappropriate for a party to ask the jury to "count" the number of witnesses and judge the sufficiency of the evidence based on "quantity" rather than "quality." *Weiler v. United States*, 232 U.S. 606, 608 (1945). *See also* Seventh Circuit Pattern Civil Jury Instruction 1.17 (2017).  Plaintiffs' motion is denied to the extent that counsel is allowed to question the sufficiency of evidence by noting that no witnesses have testified to that issue. Plaintiffs' motion is granted to the extent that counsel is barred from asking the jury to weigh the sufficiency of evidence based on the number of witnesses testifying.

**B. Disputed Topics in Defendants' Motion in Limine (ECF 111)[3]**

**1. Motion to exclude any films, photographs, or animations that have been altered or manipulated, including colorized medical imaging and films, MRIs, CTs, and X-rays (Topic 6)**

In their dispute over this motion, the parties cite significant numbers of cases both admitting and denying colorized or altered exhibits under Rule 403. All this goes to show is that, in the context of colorized or altered exhibits as in other areas, Rule 403

---

[3] Undisputed topics 1, 2, 3, 4, 5, 7, 11, 12, 13, 14, 15, 16, 17, 18, and 28 of Defendants' motion in limine are granted by agreement. (ECF 111; 112-1).

operates on a case-by-case basis and is highly dependent on the specific nature of the evidence at hand. Adopting a wholesale rule would be at odds with the tailored approach called for by Rule 403. *See Lemelson v. Gen. Mills, Inc.*, 77-C-4558, 1987 WL 16226, at *2 (N.D. Ill. Aug. 24, 1987) ("the decision to exclude evidence under Rule 403 . . . is made on a case-by-case basis." (quoting *Mainland Indus., Inc. v. Standahl's Pat's, Ltd.,* 799 F.2d 746, 750 (Fed. Cir. 1986))). The admissibility of these disputed exhibits will be evaluated at the final pretrial conference and at trial. Thus, the parties should ensure that they are prepared to make argument for and against specific exhibits under Rule 403. The Court defers ruling on this topic until after it receives oral argument.

**2. Motion to bar any reference to the jury during voir dire or opening statements that this is a "big case," generally (Topic 8)**

Defendants distinguish between statements that this is a "big case" for Plaintiffs specifically and statements that this is a "big case" generally. They argue that the former is acceptable, while the latter unduly biases the jury by inclining them to give a larger verdict before hearing any of the evidence. Plaintiffs state that they only intend to emphasize the amount of damages relative to the Saters, and that "such comments would not violate the spirit or letter of what Defendants intend to limit in this motion." (ECF 115 at 5). In their reply, Defendants accept this. (ECF 116 at 6). Thus, Defendants' motion is granted, insofar as the parties are restrained from saying that this case is "a big case" out of context of its importance to Plaintiffs.

3. **Motion to bar any reference during voir dire to a particular verdict number, or otherwise give a range similar to "millions of dollars." (Topic 9)**

Defendants argue that these sorts of questions must be barred as argumentatively priming the jury to give a larger verdict before hearing any evidence. Questions naming a specific amount or range of dollars are impermissible during voir dire. Defendants' motion is granted.

4. **Motion to bar any references or questions to jurors regarding any type of per diem pain valuation or how a juror would place monetary value on pain (Topic 10)**

Defendants argue that asking jurors about specific methods for evaluating pain would be inappropriate because it would violate both this Court's rule against asking jurors if they would be able to entertain a certain verdict, *Courtroom Procedures* ¶ 4, and also the "golden rule" which prohibits counsel from asking jurors to place themselves in the shoes of the parties. *See United States. v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007).

At this time, Defendants' request is too ambiguous to make any ruling before trial. There is no way to know whether specific formulations of this would fall within or outside voir dire's purpose of ensuring an impartial jury. *See United States v. McAnderson*, 914 F.2d 934, 942 (7th Cir. 1990). Furthermore, the parties are reminded that the Court's own voir dire is designed to fully elucidate potential juror bias without the need for parties to engage in independent questioning. N.D. Ind. L.R. 47-1(a). After the Court examines the venire, the parties may request that the court ask additional questions that are necessary and could not have been reasonably anticipated before

trial. N.D. Ind. L.R. 47-1(c). The Court's proposed voir dire may address some of the concerns expressed by the parties. The court defers ruling on this motion until trial.

5. **Motion to bar any offers to accommodate any parties in the presence of the jury (Topic 13)**

Defendants argue that "[o]ffers to accommodate Plaintiffs in the presence of the jury, like offering seat cushions to Mr. Sater, improperly garner jury sympathy and improperly suggest the veracity of disputed injuries thereby prejudicing Defendants." (ECF 111 at 15). Plaintiffs respond that Mr. Sater might need accommodations due to his injuries, but that they would "agree to see to these accommodations outside the presence of the jury as much as is practical," for example, by providing him with a pillow outside the jury's presence. (ECF 115 at 9). This appears consistent with Defendants' request that Plaintiffs not "offer to accommodate" in the jury's presence. (ECF 111 at 15). Therefore, Defendants' motion is granted, insofar as Plaintiffs' counsel is prohibited from affirmatively asking Mr. Sater if he needs accommodations in the jury's presence. However, counsel is still free to provide accommodations or respond to requests from Mr. Sater, while making those accommodations outside the presence of the jury to the extent possible.

6. **Motion to bar any reference or evidence that a witness is truthful or honest (Topic 19)**

Defendants object that statements regarding a witness's honesty are inadmissible. Defendants are correct that *counsel* may not make opinion comments regarding the honesty of a witness, as that is a determination left to the jury. *See United*

*States v. Nunez*, 532 F.3d 645, 652 (7th Cir. 2008). But *evidence* of a witness's credibility is admissible in various situations, such as when their character or credibility has been attacked. *See* Fed. R. Evid. 608(a). Defendants' motion is granted (in part), insofar as counsel is barred from stating opinions on the honesty or truthful character of a witness.

### 7. Motion to bar any reference to Mr. Sater's purported impotence (Topic 20)

Defendants object to Plaintiffs using any terminology such as "impotence" which suggest a medical diagnosis of Mr. Sater's sexual function, because there is no expert testimony on the matter. Plaintiffs agree not to use medical references such as the term "impotent" or the phrase "inability to have an erection." (ECF 115 at 11). Thus, this motion is granted, insofar as Plaintiffs are excluded from using medical terminology such as "impotent" or the phrase "inability to have an erection." However, Plaintiffs are still free to testify about their own personal experiences regarding their physical and emotional relationship. *See Boyce v. Gray*, 13-C-2967, 2016 WL 4555623, at *2 (N.D. Ill. Mar. 10, 2016) ("[U]nder the Federal Rules of Evidence, Plaintiff may testify about his own perceptions of the physical and emotional effects he experienced as a result of [defendant's actions]. (citing Fed. R. Evid. 602; *United States v. Westerfield*, 714 F.3d 480, 487 (7th Cir. 2013))).

8.  **Motion to bar any reference to future medical expenses or future medical treatment, including that such treatment will be necessary or the cost of such treatment (Topic 21)**

Plaintiffs plan to offer expert testimony on the treatment types needed. (115 at 11–12). Plaintiffs' previously designated experts will testify on the fact of future treatment. (*Id.*). Plaintiffs do not state that they plan to offer expert testimony on future medical costs. Defendants cite a plethora of state cases holding that expert testimony is required when a party wishes to submit a specific cost estimate regarding future medical care. (ECF 111 at 25). They try to expand this rule, arguing that the lack of expert testimony on precise future medical cost also bars any evidence regarding the *fact* of future medical care. (116 at 11). But none of the cases cited by Defendants hold that an expert-provided cost estimate is necessary to admit statements on the fact of future medical care. In fact, most of the cases cited by Defendants specifically limit the discussion of exclusion to concrete statements of costs, rather than the admissibility of statements discussing the need for specific types of care. *See e.g.*, *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 278 (Ind. 2003) ("[The Indiana Rules of Evidence] does not permit the introduction into evidence of written estimate of future medical *costs*") (emphasis added). And several of Defendants' cited cases do not discuss the problem of future medical expenses at all. *See, e.g.*, *Zambrana v. Armenta*, 819 N.E.2d 881, 891 (Ct. App. Ind. 2004) (discussing lost wages due to injury, not future medical expenses); *Morton v. Merrillvbille Toyota, Inc.*, 562 N.E.2d 781, 786 (discussing future workplace productivity, not future medical expenses).

13

Defendants also make a perfunctory gesture at qualification, suggesting that Plaintiffs' expert Dr. Caldwell is not qualified to testify on Mr. Sater's need for pain management because he is "not a pain management physician." First, as elsewhere in this Order, the Court notes that Defendants again appear to be making a belated *Daubert* argument after the August 29, 2025 deadline[4] has passed, on a topic that they had extensive notice of. (ECF 81-1 at 3) (Plaintiffs' May 29, 2024 expert disclosure, stating that Dr. Caldwell will testify on "future treatment recommendations" for Mr. Sater). Second, a lack of specialized expertise does not foreclose physicians from testifying on specific sub-fields when those matters touch on their practice area. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Here, Dr. Caldwell's expertise in injury treatment touches on the field of pain management related to that treatment. (ECF 81-1 at 3). Defendants' motion is granted (in part) as to the cost of future medical expenses and denied as to evidence of the need for future medical treatment.

## 9. Motion to limit or exclude testimony of or reference to fact witness Ross Stogsdill's speed guess of the Republic truck (Topic 22)

Defendants argue that Mr. Stogsdill may not testify because he did not see the accident itself and is not qualified to offer a scientific opinion. There is no evidence that Mr. Stogsdill is an expert. But under Rule 701, a lay witness may testify about non-

---

[4] The *Daubert* motions (i.e., "motions to exclude another's party's expert witness") deadline was set for August 1, 2025, in the original Order for Civil Trial filed on May 13, 2025. (ECF 64 at 5). No *Daubert* motions were filed by that deadline. Instead, Defendants filed a procedurally deficient "Agreed Notice to Extend" the *Daubert* deadline, which the Court denied on August 21, 2025. (ECF 66). Defendants subsequently filed a proper Verified Motion for Leave to Submit Belated Fed. R. Evid. 702 Motions, which the Court granted on August 29, 2025, extending the "deadline to file motions to exclude experts" until August 29, 2025. (ECF 69).

technical and helpful evidence which is "rationally based on the witness's perception." Defendants argue that Mr. Stogsdill's speed estimate is inadmissible because he did not perceive the precise moment of the accident. However, Rule 701 does not state that testimony must be on a matter "directly perceived" by a witness, but only "rationally based on" the witnesses perception. *See United States v. Saulter*, 60 F.3d 270, 276 (7th Cir. 1995). Here, Mr. Stogsdill's estimate is rationally based on his perception of the truck's actual speed moments before the accident. It does not require scientific or technical knowledge to estimate the speed of a visually perceived moving object. Defendants are of course free to call this estimate into question by cross examining Mr. Stogsdill on his estimate. Defendants' motion is denied.

### 10. Motion to bar or limit Dr. Zimmerman's testimony for failing to perform differential diagnosis (Topic 23)

Defendants argue that Dr. Zimmerman's methodology is unreliable because Dr. Zimmerman did not perform a "differential etiology" by comparing his findings with Mr. Sater's complete records from before the crash. (ECF 111 at 32).

Defendants' motion fails for several reasons. First, this motion should have been made as a Rule 702 *Daubert* motion before the extended August 29, 2025 deadline, in accordance with this Court's pretrial order—it is exactly the sort of argument that should be raised in explicit pretrial briefing, not in a motion in limine at this stage of trial preparation. (ECF 64). Defendants assert that Dr. Zimmerman's alleged methodological problems only became evident after his cross-examination during the pre-recorded trial examination. But Defendants were on notice as to what Dr.

Zimmerman planned to testify about, and were provided with his statement of analysis in Plaintiffs' expert disclosures. There is no reason why Defendants could not have deposed Dr. Zimmerman (as they did with several other of Plaintiffs' experts), and no reason why they could not have asked the same questions presented in the trial examination. There is no excuse for this belated argument.

It is precisely because of the importance of gatekeeping expert testimony under Rule 702 that parties must comply with pretrial order deadlines, which ensure that the expert testimony analysis is given the proper attention and time before the rush of trial. *See Spangler v. Sears, Roebuck and Co.*, 138 F.R.D. 122, 124 (S.D. Ind. 1991). Defendants argue that they could simply make a motion to strike at trial if denied one here. But a motion to strike on *Daubert* grounds might be denied at trial for the same reasons that an improper motion in limine would be denied here. *See Third Wave Technologies, Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 997 (W.D. Wisc. 2005) (denying a qualification challenge to plaintiff's expert witness when defendant "had ample opportunity before trial to bring a challenge to [plaintiff's] expert under *Daubert*"); *Guthrie v. Hochstetler*, 3:16-cv-473-MGG, 2018 WL 2192165, at *2 (N.D. Ind. May 14, 2018) (noting that because the party "may have waived his objection to [the expert's testimony] by failing to comply with the Court's deadline . . . . the Court would be within its authority to deny [party's] motion as untimely"); *United States v. Dish Network, LLC*, 75 F. Supp. 3d 916 (C.D. Ill. 2014) (noting that "the principle of waiver applies to *Daubert* challenges") (*citing Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1289–90 (10th Cir. 2000) ("A party

16

may waive the right to object to evidence on *Kumho/Daubert* grounds by failing to make its objection in a timely manner")).

Regardless, Dr. Zimmerman's methodology is reliable under Rule 702. Under Rule 702, a methodology is reliable if it is based on "extensive practical experience" or employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719–21 (7th Cir. 2000). Here, Dr. Zimmerman applied his medical expertise to the MRI imaging of Mr. Sater performed after the accident, evaluated the accounts of what occurred at the accident, and performed a physical examination of Mr. Sater. (ECF 111-1). He also evaluated imaging of Mr. Sater before the accident prior to his testimony. (*Id.*) Defendants object that Dr. Zimmerman was not aware of Mr. Sater's records of headaches from the year 2003. But they do not provide or cite any evidence that this one data point renders his entire methodology unreliable or insufficient under Rule 702. Nor do they present any evidence that the other components of Dr. Zimmerman's analysis did not comport with established practice. The Court denies Defendants' motion in limine.

### 11. Motion to Bar testimony of Dr. Christopher Annis and Physical Therapist Marek Serwatka as untimely disclosed (Topics 24 & 25)

Defendants have also moved to exclude the testimony of treating physicians Dr. Christopher Annis and Physical Therapist Marek Serwatka on the grounds that they were not properly disclosed.

Federal Rule of Civil Procedure 26(a)(2)(C) requires that a party timely disclose the identities of any non-retained experts such as treating physicians, in addition to (1)

"the subject matter on which the witness is expected to present evidence" and (2) "a summary of the facts and opinions on which the witness is expected to testify." When a party fails to comply with the expert witness disclosure requirements of Rule 26, exclusion of the witness is "automatic and mandatory" unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 639 (7th Cir. 2005) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Rule 26 was amended in 2010, resolving a problem related to the disclosure requirements for treating physicians and other similar experts. Before the 2010 amendment, courts would determine if a treating physician needed to file an expert report on a case-by-case basis, based on the scope of the physicians' testimony. *See Higgins v. Koch Dev. Corp.*, 997 F. Supp. 2d 924, 929 (S.D. Ind. 2014). But this was insufficient to address the problem that treating physician's testimony usually "blurs the line" between expert and lay matters. *Coleman v. Am. Fam. Mut. Ins.*, 274 F.R.D. 641, 929 (S.D. Ind. 2014) (citing Fed. R. Civ. P. 26 advisory committee notes, 2010 amendments). On one hand, it might be too much to expect a full expert report from a witness who was not consulted in anticipation of litigation and who was merely relaying their recollections of treatment. But on the other hand, that testimony will often involve expert matters under Rule 702, 703, or 705. The 2010 amendment threaded this needle by adding an intermediate requirement, less burdensome than the expert reports required for consulting experts under Rule 26(a)(2)(B), but more than what was required of lay witnesses: Rule 26(a)(2)(C) mandates that even if a witness is not

retained to give expert testimony, the parties must still must file "(i) the subject matter on which the witness is expected to present evidence" and "(ii) a summary of the facts and opinions on which the witness is expected to testify" if the witness will testify on matters requiring expertise under Rule 702, 703, or 705. The comments to this amendment explicitly discussed this rule's application to treating physicians. Fed. R. Civ. P. 26 advisory committee notes, 2010 amendments.

Plaintiffs do not contest that they failed to comply with the Rule 26 disclosure requirement. However, they argue that Defendants had substantial notice of Annis and Serwatka's testimony and also cite to several cases in which treating physicians were allowed to testify as "fact witnesses" testifying only to their firsthand observations despite failing to comply with Rule 26. (ECF 115 at 23).

There are several problems with these arguments. First, Rule 26 and Rule 37 are phrased in a way which strongly supports the conclusion that the usual consequence for failure to comply is exclusion of the witness, not a limitation in the testimony's scope. Rule 37(c)(1) states that a party is "not allowed to use that . . . witness" when failing to comply with disclosure under Rule 26. This means that exemptions must meet the high bar set under Rule 26(a)(2): that the failure to disclose must have been "substantially justified or harmless."

When courts grant exemptions, it is almost entirely when there is still some notice well in advance of trial and the discovery period had not yet closed, leading to minimal prejudice. See *Marvin v. Holcomb*, 3:20-CV-553-MGG, 2022 WL 18956480, at *7 (N.D. Ind. 2022) (collecting cases and finding that when courts granted exemptions,

"the defendants were on clear, advanced notice of a treating physician's testimony based upon information disclosed by the plaintiff's initial disclosures or in a preliminary witness list, as well as production of the treating physician's medical records early in discovery"); *Ballinger v. Casey's Gen. Store, Inc.*, 1:10-CV-1439-JMS-TAB, 2012 WL 1099823, at *5 (S.D. Ind. Mar. 29, 2012) (ruling that failure to initially disclose was harmless, as "prejudice and surprise is minimal because Plaintiffs filed their preliminary witness list. . . . several months before the close of discovery."); *Nnadi v. Menard*, Inc., 29-CV-197, 2013 WL 12310674, at *3 (N.D. Ind. Mar. 22, 2013) (allowing experts as fact witnesses because party "gave notice that he intended to call [the treating physician])" (contrasting with other cases in which the party failed to designate its expert at all).

Plaintiffs argue that Defendants had notice of Annis and Serwatka's testimony because (1) Plaintiffs had disclosed Annis and Serwatka as treating physicians and (2) previously stated in an interrogatory response that"[i]t is also likely Plaintiff will call one or more of his treating physicians, including but not limited to Dr. Joseph Caldwell, Dr. Skyler King, Dr. Devin Zimmerman, Dr. Jeffry Szuba, and Dr. Jeffrey Howe." (ECF 116 at 18). Annis and Serwatka were apparently included in the "not limited to" portion of this collateral statement.

This is not sufficient to put Defendants on adequate notice. Plaintiffs' interrogatory response as to potentially calling treating physicians occurred on September 8, 2023, prior to the disclosure of Annis and Serwatka as treating physicians on May 29, 2024. (ECF 115 at 23). That earlier response named other physicians, but did

20

not mention Annis and Serwatka. Even when Annis and Serwatka's names were disclosed as treatment providers, they were not formally listed but buried in medical records contained within the filing. (ECF 81-1).

It was not until Plaintiffs' trial brief that this proffered testimony was disclosed, more than seven months after the close of discovery. (ECF 61; 104). This does not constitute fair and ample notice. Defendants state that they have not had time to develop a trial strategy or develop counterargument through deposition or the designation of counter-witnesses. (ECF 116 at 23). Thus, allowing these late-disclosed physicians to testify would require re-opening discovery. *See Collier v. City of Fort Wayne*, 1:15-CV-00104-SLC, 2017 WL 1325428, at *3 (N.D. Ind. 2017) (refusing to exempt undisclosed treating physicians when it would require the court to reopen discovery).

Moreover, this trial has already been continued due to criminal matters. It would further complicate trial scheduling to take into account the timeframe needed for Defendants to adequately prepare for these belated disclosures. Even if there was time for Defendants to prepare, admitting Annis and Serwatka nine months after the close of discovery would lead to significant burden and expense for Defendants. *See Schmelzer v. Muncy*, 3:16-CV-00290-GCS, 2019 WL 3842335, at *6 (S.D. Ill. 2019) (The reopening of discovery would result in increased costs and burden to the Defendants); *Kessel v. Cook County*, 00-C-3980, 2002 WL 1021560, at *8 (N.D. Ill. 2002) (reopening discovery would "cause further delay and expense"); *Webb v. City of Joliet*, 03-C-4436, 2006 WL 1005365, at *3 (N.D. Ill. 2006) (reopening discovery would "impose additional costs and burdens on the Court and the defendants and would unduly delay the resolution" of the case).

Finally, if Annis and Serwatka were allowed to testify as "fact witnesses," it is not clear if any of their testimony would fall under Rule 701 or be helpful to the jury. In their request to admit Annis and Serwatka as "fact witnesses," Plaintiffs appear to misunderstand the scope of what a lay witness may testify to. A lay witness is limited to the scope of what is admissible under Rule 701: matters which do *not* require "scientific, technical, or other specialized knowledge." Plaintiffs state in their brief that Dr. Annis will not testify on "causation" but only testify as to "observations, history, treatment, and diagnosis" concerning Mr. Sater's pain treatment. (ECF 115 at 24). But medical diagnosis is a matter which requires specialized knowledge and is thus outside the scope of Rule 701. *See Hansen v. Fincantieri Marine Grp., LLC*, 12-C-32, 2013 WL 12313855 (E.D. Wisc. Sept. 27, 2013) ('The diagnosis and treatment of serious health conditions are matters of expert opinion outside the scope of a lay person's knowledge."). This is true even if Dr. Annis made those statements as part of Mr. Sater's treatment rather than in anticipation of litigation. *See Musser v. Gentiva Health Servs*, 356 F.3d 751, 756 n.2 (7th Cir. 2004) (holding that "a party *shall disclose* to other parties the *identity of any person* who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence," rejecting previous circuit precedent which held that a "doctor is not an expert if his or her testimony is based on . . . observations during treatment," and stating that "a treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation.") (emphases in original) (citations

omitted). *See also Girard v. Menard, Inc.*, 3:21-CV-50460, 2023 WL 3847109, at *3 (N.D. Ill. June 6, 2023) (holding that treating physicians must provide in advance a summary of the content of "the doctor's treatment, diagnoses, and medical records"); *Gonzalez v. Rodgers*, 2:09–CV–225–JTM–PRC, 2011 WL 5040673, at *5 (N.D. Ind. Oct. 24, 2011) ("at a minimum, however, Plaintiffs were required to disclose the information identified in Rule 26(a)(2)(C) for each treating physician that is *giving only testimony as to observations, diagnoses, and conclusions reached during the course of treatment*.") (emphasis added).

Plaintiffs did not need to file expert reports for Annis and Serwatka under 26(a)(2)(B). Instead, they were required to file a minimal disclosure under 26(a)(2)(C). Plaintiffs failed to comply with this. Nor have Plaintiffs shown how the testimony of Annis and Serwatka would be uniquely helpful to the jury under Rule 701, given that their testimony may not rely on any specialized knowledge. However, if Plaintiff can show that Annis and Serwatka have true lay testimony which is helpful to the jury under Rule 701, they would be permitted to testify. Thus, the motion to completely exclude Annis and Serwatka is deferred until trial.

### 12. Motion to bar or prohibit any economic damages (Topic 26)

Defendants argue that Plaintiffs should be barred from discussing economic damages or medical expenses at trial because their trial brief failed to identify the amount or method of proving lost wages, in violation of this Court's Order for a Civil Trial, which required the parties to brief issues "reasonably anticipated to arise at trial." (ECF 64 at 8). But Plaintiffs did provide an amount of economic damages in the form of lost wages, and have disclosed an expert to testify on the matter. (ECF 104 at 10–16).

Plaintiffs also provided the quantity of past medical expenses incurred by Mr. Sater. (ECF 104 at 11).

Defendants further argue that this Court should exclude any evidence or argument related to past medical expenses because Plaintiffs failed to brief how they would proceed in claiming medical expenses under *Stanley v. Walker*, 906 N.E.2d 852 (Ind. 2009), which allows a defendant to introduce evidence of the discounted value of medical bills in addition to the (usually higher) charged value when presenting estimates of reasonable medical expenses to the jury. *Id.* 853. But Plaintiffs are assumed to have operated in good faith in complying with the pretrial order; Defendants have not shown that Plaintiffs acted in bad faith, or that they will be negatively impacted by Plaintiffs' omission of briefing on these issues. In fact, Defendants already state in their trial brief that they plan to bring the discounted value of Mr. Sater's medical bills into evidence under *Stanley*. (ECF 107 at 11). Plaintiffs have lodged no objection to this—even now, it is still far from clear that *Stanley* or the admissibility of medical records will be disputed issues at trial. Defendants' motion is denied.

## 13. Motion to reserve the right to file additional motions in limine subsequent to the Court's pending ruling on Defendants' 702 motions (Topic 27)

The Court ruled on these motions on December 8, 2025. (ECF 113). Thus, this motion is now moot.

### CONCLUSION

Plaintiffs' motion in limine (ECF 109) is hereby **GRANTED** as to topic 1 and 6. Thus, the Court **ORDERS** that (1) the parties are barred from presenting evidence or

argument as to how the judgment will be paid and by whom, and (2) the parties are precluded from evidence or argument related to Mr. Sater's hospitalization records indicating drug and alcohol use.

Plaintiffs' motion in limine is **DENIED** as to topics 2, 3, 4, 5, and 9.

Plaintiffs' motion in limine is **GRANTED IN PART** as to topic 7. The Court **ORDERS** that counsel is barred from asking the jury to weigh the sufficiency of evidence based on the number of witnesses testifying, but may question the sufficiency of evidence by noting that no witnesses have testified to that issue.

The Court **DEFERS** ruling on Plaintiffs' motion in limine on topic 8 until trial.

Defendants' motion in limine (ECF 111) is **GRANTED** as to topics 8, 9, 13, and 20. Thus, the Court **ORDERS** that (1) the parties are restrained from discussing how this case is "a big case" out of context of its importance to Plaintiffs, (2) the parties shall not state a specific dollar amount or range during voir dire questioning, (3) Plaintiffs' counsel is prohibited from affirmatively asking Mr. Sater if he needs accommodations in the jury's presence, and (4) Plaintiffs may not use any technical terminology that suggests a medical diagnosis of Mr. Sater's sexual function, including "impotent" or the phrase "inability to have an erection."

Defendants' motion in limine is **GRANTED IN PART** as to topics 19 and 21. Thus, the Court **ORDERS** that (1) counsel is barred from stating personal opinions on the honesty or truthful character of a witness, but may use evidence to attack a witness's credibility under Rule 608, and (2) Plaintiffs may not present evidence or

argument regarding the cost of future medical expenses, though they may introduce evidence of the need for future medical treatment.

Defendants' motion in limine is **DENIED** as to topics 22, 23, and 26. Topic 27 is **DENIED AS MOOT**.

The Court **DEFERS** ruling on Defendants' motion in limine on topics 6, 10, 24, and 25 until trial.

The Court is free, in the exercise of sound judicial discretion, to alter this in limine ruling, especially if actual testimony during trial differs from what was contained in the original motions. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984). The parties are **ADVISED** that they are responsible for policing and enforcing this order. The Court will only address potential violations of this order if raised explicitly during trial.

SO ORDERED on January 27, 2026.

   /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT